IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

PAUL DAVID SCHULTZ,                          )
                                             )
    Appellant,                               )
                                             )        1:25-cv-1598 (LMB/IDD)
    v.                                       )
                                             )        No. 24-11959 (BFK)
THE MARTIN LAW GROUP, P.C., et al.,          )        (Chapter 11)
                                             )
    Appellees.                               )

## MEMORANDUM OPINION

This appeal arises out of appellee the Martin Law Group's representation of appellant

Paul David Schultz ("Schultz") during his Chapter 11 bankruptcy proceeding.  Schultz, who is

now proceeding pro se, has appealed the bankruptcy court's September 15, 2025 order,[1] which

approved the Martin Law Group's application for compensation and denied Schultz's motion

seeking the disgorgement of the retainer funds held by his former counsel.  The appeal has been

---

[1] As of April 20, 2026, Schultz has appealed eleven other rulings of the bankruptcy court.
Schultz v. Cheney, 1:25-cv-322 (Order Granting Motion to Convert Case to Chapter 7); Schultz
v. Gold, et al., 1:25-cv-927 (Order Sustaining Trustee's Objection to Exemptions); Schultz v.
Clear Sky Fin., LLC, 1:25-cv-1334 (Order Denying Motion to Reconsider); Schultz v. Clear Sky
Fin., LLC, et al., 1:25-cv-1335 (Order Dismissing Removed Complaint); Schultz v. Gold, 1:25-
cv-1336 (Order Denying Requests to Stay and Reschedule Proceedings); Schultz v. Clear Sky
Fin., LLC, 1:25-cv-1497 (Order Denying Motion to Disqualify); Schultz v. Gold, et al., 1:25-cv-
1498 (Order Denying Debtor's Motions); Schultz v. Cheney, 1:25-cv-1499 (Order Denying
Motion to Reconsider); Schultz v. Clear Sky Fin., LLC, et al., 1:25-cv-1843 (Order Overruling
Objection to Claim); Schultz v. Clear Sky Fin., LLC, et al., 1:25-cv-1938 (Order Denying
Motion for Relief from Judgment); Schultz v. Clear Sky Fin., LLC, et al., 1:26-cv-984 (Order
Granting Plaintiff's Motion to Dismiss).  Schultz also sought leave to file an interlocutory appeal
of the bankruptcy court's order denying his Motion for Mandatory Criminal Referral and for
Supervisory Action.  Schultz v. McCarthy, et al., 1:26-cv-410.

fully briefed,[2] and the Court has determined that oral argument will not assist the decisional process. For the reasons discussed below, the bankruptcy court's decision will be affirmed.

## I.

"The principal purpose of the Bankruptcy Code is to grant a 'fresh start' to the 'honest but unfortunate debtor.'" Marrama v. Citizens Bank of Mass., 549 U.S. 365, 367 (2007) (quoting Grogan v. Garner, 498 U.S. 279, 286–87 (1991)). A debtor begins that process by filing a bankruptcy petition under one of the Bankruptcy Code's six operative chapters. David v. King, 109 F.4th 653, 656 (4th Cir. 2024). Although bankruptcy cases are filed under a specific chapter, they "may, under certain circumstances, be transferred to another chapter in a process called conversion." Id. Here, Schultz's case has been converted from Chapter 11 to Chapter 7. Under Chapter 11, the estate is administered, in most cases, by the debtor himself with the goal of establishing "a framework for the reorganization of debts." Id. By contrast, under Chapter 7, the debtor must turn over all nonexempt assets to a trustee, who liquidates the debtor's assets for the benefit of the creditors. Id.

To assist in carrying out his duties, the debtor-in-possession in a Chapter 11 case may employ an attorney, subject to court approval. 11 U.S.C. §§ 327(a), 1107(a). The attorney must be "disinterested" and must "not hold or represent an interest adverse to the estate." Id. § 327(a). To employ an attorney, the debtor-in-possession must submit to the bankruptcy court an application that outlines "the need for the employment," "the name of the person to be employed," "the reasons for the selection," "the professional services to be rendered," and "any

---

[2] Schultz's 78-page opening brief violates Local Civil Rule 7(F)(3), which limits briefs to 30 pages. Although Schultz has been warned that the filing of briefs exceeding the Court's page limit may result in sanctions, see Schultz v. Clear Sky Fin., LLC, et al., 1:25-cv-1335, Dkt. No. 16, at 2 (E.D. Va. Nov. 10, 2025), the Court has considered Schultz's entire brief and reiterates its warning that Schultz cannot file briefs in excess of the page limit without leave of court.

proposed arrangement for compensation." Fed. R. Bankr. P. 2014(a)(1)–(2). The application must also disclose "all the person's connections with" the debtor, creditors, parties-in-interest, attorneys and accountants involved in the case, the trustee, and "any person employed in the United States trustee's office." Fed. R. Bankr. P. 2014(a)(2). If the debtor-in-possession properly employs an attorney under § 327(a), the bankruptcy court may award to that attorney "reasonable compensation for actual, necessary services" and "reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1)(A)–(B). Finally, just as the conversion of a case from Chapter 11 to Chapter 7 terminates the debtor's status as debtor-in-possession, it also terminates his attorney's service under § 327(a). Lamie v. U.S. Tr., 540 U.S. 526, 532 (2004).

## II.

The following facts are undisputed. On October 21, 2024, Schultz, acting pro se, filed a Chapter 11 Voluntary Petition in the bankruptcy court. [Bankr. Dkt. No. 1].[3] In that filing, Schultz indicated that he disputed the validity of a loan that creditor Clear Sky Financial, LLC ("Clear Sky") provided to him in connection with his fix-and-flip business. Id. at 20. Eight days later, Clear Sky commenced an adversary proceeding against Schultz to affirm the validity of its loan. [Adv. Proc. Dkt. No. 1].[4] Additionally, on November 26, 2024, the U.S. Trustee filed in the main case a motion to convert the case to a Chapter 7 liquidation. [Bankr. Dkt. No. 51].

Schultz proceeded pro se in both the main case and the adversary proceeding until mid-December 2024, when an attorney from the Martin Law Group filed an Application to Employ Legal Counsel ("Employment Application"), indicating that Schultz had retained the firm and

---

[3] Citations to the bankruptcy docket sheet refer to the main case, 1:24-bk-11959-BFK.

[4] Citations to the adversary proceeding docket sheet refer to the adversary proceeding commenced by Clear Sky in October 2024, 1:24-ap-1058-BFK.

requesting that the court "authorize the employment and compensation of the law firm . . . as counsel for the Debtor." [Bankr. Dkt. Nos. 62 & 63]. As to compensation, the Employment Application contained the following information:

> Compensation of Counsel shall be based on the usual hourly rates for attorney time established from time to time by Counsel for matters of this kind, rates presently range from $350–500 per hour of attorney time. Debtor has offered payment of an initial retainer in the amount of $25,000.00 payable within 30 days. $3,330.00 of the retainer was paid by Tara Schultz, and $1,670.00 of the retainer was paid by Linda J. Schultz-Wikul.

[Bankr. Dkt. No. 63] at ¶ 3. The Employment Application also indicated that counsel had "no connection with the Debtor, the U.S. Trustee, or with any party in interest in connection with th[e] case, or their respective attorneys or accountants, and represent[ed] no interest adverse to the Debtor or [his] estate in the matters upon which they are to be engaged by the Debtor." Id. ¶ 4. Attached to the pleading was a Verified Statement of Counsel Pursuant to Federal Rule of Bankruptcy Procedure 2014 supporting those representations. [Bankr. Dkt. No. 63-1].

Although the bankruptcy court never entered a formal order approving the Employment Application, the Martin Law Group filed numerous pleadings on Schultz's behalf in both the main case and the adversary proceeding, including an opposition to the motion to convert, [Bankr. Dkt. No. 65]; Chapter 11 monthly operating reports, [Bankr. Dkt. Nos. 72 & 73]; an answer and counterclaims, [Adv. Proc. Dkt. No. 21]; and an objection to Clear Sky's motion for summary judgment, [Adv. Proc. Dkt. No. 27]. The Martin Law Group also appeared before the bankruptcy court on Schultz's behalf during the January 21, 2025 hearing on Clear Sky's motion for summary judgment, [Adv. Proc. Dkt. No. 29], and the February 11, 2025 hearing on the trustee's motion to convert, [Bankr. Dkt. No. 74]. Ultimately, Schultz was unsuccessful in both of those matters: The bankruptcy court granted Clear Sky's motion for summary judgment on February 7, 2025, [Adv. Proc. Dkt. No. 30], and converted the case from a Chapter 11

4

reorganization to a Chapter 7 liquidation on February 13, 2025, [Bankr. Dkt. No. 75].  Although the case had been converted, the Martin Law Group continued to represent Schultz by filing a notice of appeal, [Bankr. Dkt. No. 77], and amended schedules, [Bankr. Dkt. No. 98], even though Schultz did not file a renewed application to employ the firm.

On April 30, 2025, the Martin Law Group filed a Motion to Withdraw as Counsel, indicating that "it ha[d] become apparent that Counsel and the Debtor have irreconcilable differences and the attorney-client relationship between Counsel and the Debtor ha[d] deteriorated to such a level that it would be impracticable for Counsel to continue representation of the Debtor." [Bankr. Dkt. No. 123] at ¶ 3.  Subsequently, Schultz, acting pro se, filed a pleading titled "Motion to Compel Withdrawal of Counsel, Motion to Expedite Motion to Compel Withdrawal of Counsel and Declaration of Misconduct." [Bankr. Dkt. No. 127].  In that pleading, Schultz argued that his attorneys "were more than simply grossly negligent" but "were actually adversarial to their client." Id. at 7.  Specifically, Schultz claimed that, in the adversary proceeding, his attorneys waived his constitutional right to a jury trial, withheld exhibits, "suppress[ed] their client's repeated attempts to have additional civil claims of Fraud" and "UCC violations," and failed to file a notice of appeal. Id. at 7–10.  On May 9, 2025, the bankruptcy court granted both the Martin Law Group's Motion to Withdraw as Counsel and Schultz's Motion to Compel Withdrawal of Counsel. [Bankr. Dkt. No. 130].

On May 23, 2025, the Martin Law Group filed a timely First and Final Fee Application ("Fee Petition"), which sought $21,836.50 in legal fees and $36.34 in expenses for the period from December 12, 2024 through February 12, 2025. [Bankr. Dkt. No. 146].  Attached to the Fee Petition were an invoice detailing the work the firm performed in Schultz's case and a table (featured below) outlining the total hours expended on the case and the hourly rates of attorneys Jeffrey T. Martin, John E. Reid, and Diana P. Dias, as well as paralegal Brittany Mathie:

| NAME | TOTAL HOURS EXPENDED | ALLOWED HOURLY RATE | AMOUNT |
|---|---|---|---|
| Jeffery T. Martin, Jr. | 2.0 | $550 | $1,100.00 |
| | 11.6 | $575 | $6,670.00 |
| John E. Reid | 11 | $485 | $5,335.00 |
| | 13.6 | $495 | $6,732.00 |
| Diana P. Dias | .4 | $350 | $140.00 |
| | 4.7 | $365 | $1,715.50 |
| Brittany Mathie | .8 | $180 | $144.00 |
| | 44.1 | | $21,836.50 |

[Bankr. Dkt. Nos. 146-1 & 146-2]. The bankruptcy court scheduled oral argument on the Fee Petition for June 17, 2025, [Bankr. Dkt. No. 147], and Schultz filed an objection, in which he argued that the Martin Law Group's services did not benefit the estate because his attorneys failed to present key evidence, failed to object to court orders, waived Schultz's constitutional right to a jury trial, and committed legal malpractice, [Bankr. Dkt. No. 158]. On June 17, 2025, the bankruptcy court held a hearing on the Fee Petition, but only Schultz appeared, and the matter was removed for failure to prosecute. [Bankr. Dkt. No. 161].

On June 20, 2025, Schultz filed a Motion to Disgorge Retainer Funds Held by Former Counsel Jeffrey T. Martin ("Motion to Disgorge"), which sought an order directing the disgorgement of the $17,500 retainer Schultz had paid to the Martin Law Group.[5] [Bankr. Dkt. No. 164]. On July 11, 2025, Jason Gold ("Gold"), the then-Chapter 7 trustee,[6] filed a response to the Motion to Disgorge indicating that he neither agreed with the allegations of misconduct nor believed that Schultz had a meritorious claim for legal malpractice. [Bankr. Dkt. No. 194] at ¶ 1. Gold also indicated that any disgorged retainer funds "would be property of the estate payable to

---

[5] Although the Employment Application indicated that Schultz would pay a $25,000 retainer, the firm received only $17,500. [Dkt. No. 395] at 5:2–6.

[6] Gold resigned on July 29, 2025, [Bankr. Dkt. No. 219], and a new trustee was appointed.

the Trustee." Id. ¶ 2. Schultz filed a reply, arguing that the Gold's opinion "necessarily lacks integrity as it is tainted from the conflicts, bias, and other unethical and potentially illegal actions he has taken or failed to take in this case." [Bankr. Dkt. No. 234] at ¶ 3.

The Martin Law Group subsequently noticed a hearing on the Fee Petition, [Bankr. Dkt. No. 240], and the bankruptcy court held argument on both the Fee Petition and the Motion to Disgorge on September 9, 2025, [Bankr. Dkt. Nos. 283 & 284]. During the hearing, the court heard testimony from attorney Jeffrey T. Martin as well as argument from Schultz and counsel for the Martin Law Group. [Dkt. No. 395] (hereinafter "Hr'g Tr."). The court then issued an oral ruling awarding the Martin Law Group fees in the reduced amount of $19,055.07 and expenses in the amount of $36.04.[7] Hr'g Tr. at 44:8–10; see also [Bankr. Dkt. No. 301].

In reaching that conclusion, the bankruptcy court first found that "a reasonable attorney, at the time the services were rendered, would believe such services would be reasonably likely to benefit the estate." Hr'g Tr. at 40:9–12. Next, pointing to the vigorous arguments advanced by Schultz's attorneys, their extensive legal experience, and the "undesirability of the case within the legal community," the court held that the attorneys' hourly rates and the number of hours spent on Schultz's case were reasonable. Id. at 40:19–43:4. Finally, as to Schultz's Motion to Disgorge, the court emphasized that "counsel's conduct had not fallen below the standard of care for an attorney under the circumstances of this bankruptcy case and adversary proceeding." Id. at 45:4–7. Because the Martin Law Group was permitted to apply the $17,500 retainer it had

---

[7] Although the Martin Law Group requested $21,836.50 in fees, the court reduced that number in three ways. First, the court subtracted $252.20 from the December 12, 2024 billing entry because the firm included a "blocked 5.2-hour time entry." Hr'g Tr. at 43:15–18. Second, the court subtracted $412 to "disallow the post-conversion time entries." Id. at 43:19–24. Finally, the court reduced the remaining $21,172.30 by 10% because "the case was ultimately unsuccessful in terms of reorganization and in the adversary proceeding." Id. at 42:12–15. That left the Martin Law Group with a fee award totaling $19,055.07. Id. at 44:8–10.

already received from Schultz, there was a remaining unpaid amount of $1,591.41, which was "deemed a Chapter 11 administrative expense." [Bankr. Dkt. No. 301]. On September 22, 2025, Schultz filed a timely Notice of Appeal. [Bankr. Dkt. No. 318].

III.

Schultz raises several arguments on appeal, each of which will be addressed in turn. His first argument is that the bankruptcy court lacked authority to award fees to the Martin Law Group because the court never entered an order approving Schultz's application to employ the firm. [Dkt. No. 14] at 1, 14. Taking §§ 327(a) and 1107(a) together, a Chapter 11 debtor-in-possession, "with the court's approval, may employ one or more attorneys . . . to represent the [debtor-in-possession] in carrying out [his] duties." Put differently, "to employ a professional, the [debtor-in-possession] must apply to the bankruptcy court, and the court must then approve the application." David, 109 F.4th at 658.

Here, Schultz retained the Martin Law Group "a couple of days before the holidays," Hr'g Tr. 4:6–7, and the firm began working on Schultz's case on December 12, 2024, [Bankr. Dkt. No. 146-2]. Just a few days later, on December 17, 2024, the firm filed an Employment Application on Schultz's behalf, which fully complied with § 327(a) and Rule 2014. [Bankr. Dkt. No. 63]. In particular, it explicitly stated that "[c]ounsel has no connection with the Debtor, the U.S. Trustee, or with any party in interest in connection with this case, or their respective attorneys or accountants, and represents no interest adverse to the Debtor or its estate in the matters upon which they are to be engaged by the Debtor." Id. ¶ 4. The firm also attached to the Employment Application a verified statement of counsel in compliance with Rule 2014(a)(3). [Bankr. Dkt. No. 63-1]. Although the bankruptcy court never entered a formal order approving the Employment Application, after filing the pleading, the Martin Law Group represented Schultz in both the Chapter 11 proceeding and the adversary proceeding by filing several

8

pleadings on Schultz's behalf and appearing before the court for oral argument. See [Bankr. Dkt. Nos. 65, 72–74]; [Adv. Proc. Dkt. No. 21, 27, 29–30]. At the end of the representation, the Martin Law Group sought—and the bankruptcy court granted—fees from the beginning of the representation through February 12, 2025, which was the day before the court converted the case from a Chapter 11 reorganization to a Chapter 7 liquidation. [Bankr. Dkt. No. 146].

The parties have not identified, and this Court has not located, a single case addressing the unique facts at issue in this appeal—namely, whether a bankruptcy court may award fees to the Chapter 11 debtor's attorney where a proper employment application was filed at the beginning of the representation but where the bankruptcy court did not enter an order approving the application when it was filed and before counsel began working for the debtor. In support of his position that the bankruptcy court's failure to enter an order approving the Employment Application before counsel began providing legal services precluded the court from awarding fees, Schultz relies extensively on the Fourth Circuit's opinion in David v. King, which involved a bankruptcy proceeding that had transformed from Chapter 7 to Chapter 11 to Chapter 13. 109 F.4th at 656. At the beginning of the Chapter 7 phase, the bankruptcy court approved the trustee's application to retain a law firm under § 327(a). Id. at 658. When the case was converted to Chapter 11, the trustee was required to file a renewed application to employ the firm. Even though the law firm continued to provide legal work during the Chapter 11 phase, the trustee never filed a renewed application for employment. Id. When the case was converted to a Chapter 13 proceeding, the trustee who had been appointed in both the Chapter 7 and Chapter 11 phases was replaced by a different trustee. Id. at 659. Several months later, the law firm sought fees for the work it provided during the Chapter 11 phase; however, the bankruptcy court denied its request but granted leave to file a nunc pro tunc employment application. Id. at 659. In response, the former trustee filed an application under § 327(a) to retroactively retain the firm for

9

the Chapter 11 phase, and the bankruptcy court granted the former trustee's application and the firm's request for fees. Id. The Fourth Circuit majority reversed, addressing the "narrow question" of whether "a former trustee" can "apply under § 327(a) for retroactive approval to employ professionals and seek their compensation under § 330 for work performed while he was the acting trustee." Id. at 661. Focusing on the text of § 327(a) and Rule 2014—both of which simply refer to "the trustee"—the Fourth Circuit held that the former trustee could not file a retroactive employment application under § 327(a). Id. at 663. The David court did not address whether an application for attorney's fees could be approved months after the law firm began providing legal services to the debtor.

Because the Fourth Circuit centered its analysis on the critical fact that the former trustee—rather than the current trustee—filed the retroactive application, David does not support Schultz's position that the bankruptcy court was precluded from awarding fees to the Martin Law Group after failing to approve the Employment Application when it was first filed. In fact, there is language in David that suggests the exact opposite. In reviewing the trustee's equity-based arguments, the Fourth Circuit recognized that many circuits permit the retroactive approval of § 327(a) employment applications, "grounding the practice in the 'purposefully nonmechanical nature of equity.'" Id. at 664 (quoting In re Jarvis, 53 F.3d 416, 419 (1st Cir. 1995)); see Matter of Triangle Chems., Inc., 697 F.2d 1280, 1289 (5th Cir. 1983) ("[N]either bankruptcy statute nor rule preclude the bankruptcy judge in the exercise of its discretion, and as a court of equity administering equitable principles, from entering an order [post-hoc] authorizing the employment of an attorney for the debtor in possession."). The Fourth Circuit also emphasized that there "was no bad faith attempt to hide the ball by the law firm and that the bankruptcy court was well aware of [the firm's] work." David, 109 F.4th at 655. All told, the Fourth Circuit stated that these equity-based arguments would have been "compelling" but for the problem that

10

the efforts to seek retroactive approval of the employment application were undertaken by the former trustee, rather than the current trustee. Id.

Of course, the facts at issue in Schultz's appeal are distinct from David. In this case, the issue is that the bankruptcy court has not actually entered an order retroactively approving the Employment Application; however, judicial economy counsels against remanding this case to the bankruptcy court simply for the court to enter an order approving the Employment Application, particularly given that the application to retain the firm fully complied with § 327(a) and Rule 2014, the application was filed at the beginning of the representation, the court was fully aware of the firm's work, and the court ultimately found that the fees requested were reasonable. As Judge Wilkinson aptly observed in his David dissent, "bankruptcy courts have long been recognized as courts of equity that apply the principles and rules of equity jurisprudence" and have long "exercised their equitable discretion to grant after-the-fact authorizations of professional services already performed under § 327(a)." 109 F.4th at 668 (Wilkinson, J., dissenting) (cleaned up). Simply put, it would be unjust to deny fees to an attorney who worked "in good faith" at the behest of the debtor-in-possession "with the knowledge and acquiescence of . . . the bankruptcy court." Id.; see also 3 Collier on Bankruptcy ¶ 327.03 ("Courts also have permitted the use of . . . post facto orders to validate a previous failure to obtain the requisite court approval and obviate an oversight that otherwise would result in unfair and inequitable consequences."). For all these reasons, this Court finds that because a proper application under § 327(a) to employ the Martin Law Group was filed at the beginning of the representation, the bankruptcy court did not err in granting the firm's Fee Petition, even though the bankruptcy court had not issued a formal order granting the application for employment.

Schultz's second argument is that the bankruptcy court erred in limiting its review of the services the Martin Law Group rendered to those rendered before February 12, 2025. [Dkt. No.

11

14] at 18–19. According to Schultz, the February 12, 2025 cutoff was "legally baseless" and "renders the fee award unauthorized as a matter of law." Id. at 19. Schultz contends that if the bankruptcy court reviewed the services the firm provided to him after February 12, 2025, it would have discovered "misconduct, concealment, abandonment, conflicts of interest, or other conduct affecting the integrity of the representation." Id. Specifically, he maintains that his attorneys "intentional[ly] quash[ed] [their] own purported client's voice," failed to zealously defend their client, abandoned their client "during a critical stage of the bankruptcy proceedings," and failed to "withdraw before key deadlines." Id. at 22. Schultz contends that the bankruptcy court ignored this misconduct and "abdicated" its responsibility to "ensur[e] that estate fiduciaries . . . act with candor, disclosure, and undivided loyalty." Id. at 23.

Schultz's argument is meritless. As the Martin Law Group correctly responds, [Dkt. No. 19] at 8–9, the February 12, 2025 cutoff date was not selected to avoid review of the firm's alleged misconduct; rather, it was selected to comport with Lamie v. U.S. Trustee, 540 U.S. 526 (2004). In Lamie, the debtor retained an attorney to prosecute a Chapter 11 action with the approval of the bankruptcy court under § 327. Id. at 531. Three months into the Chapter 11 reorganization, however, the United States Trustee filed a motion to convert the action into a Chapter 7 liquidation proceeding. Id. at 532. The bankruptcy court granted the motion, which "terminated [the debtor's] status as debtor-in-possession and so terminated [the attorney's] service under § 327 as an attorney for the debtor-in-possession." Id. Nonetheless, the attorney— without seeking the trustee's or the court's authorization under § 327—continued to provide legal services to the debtor. Id. The debtor's attorney was duly compensated under § 330 for the services rendered before the conversion, but when the attorney sought fees for the time he spent on the debtor's behalf after the conversion, the bankruptcy court denied the fee petition. Id. The Supreme Court affirmed, holding that when an action is converted to a Chapter 7 proceeding, the

12

debtor's attorney may be paid from estate funds only if he had been employed by the trustee and approved by the bankruptcy court in the Chapter 7 proceeding. Id. at 537. Because the debtor's attorney did not seek authorization under § 327 after the action was converted, he was not entitled to fees for the post-conversion services he provided to the debtor. Id.

Schultz's case mirrors the facts at issue in Lamie. During the Chapter 11 reorganization, Schultz, as the debtor-in-possession, retained the Martin Law Group under § 327. The action was eventually converted to a Chapter 7 liquidation, and although the firm continued to represent Schultz, it did not file an employment application or obtain approval under § 327 from the trustee or the court to provide services in connection with the Chapter 7 proceeding. Recognizing that Lamie precluded the firm from collecting fees for services rendered in connection with the Chapter 7 proceeding, the firm sought fees only for the services it rendered in connection with the Chapter 11 proceeding. And because the bankruptcy court entered its order converting the case from Chapter 11 to Chapter 7 on February 13, 2025, [Bankr. Dkt. No. 75], the firm selected a cutoff date of February 12, 2025. Given this perfectly rational explanation as to why both the firm and the bankruptcy court limited their review to those services rendered before February 12, 2025, Schultz's second argument will be rejected.

Schultz's third argument is that the bankruptcy court erred in concluding that the law firm's services were necessary and reasonably likely to benefit the estate. [Dkt. No. 14] at 31–38. 11 U.S.C. § 330 governs the payment from a bankruptcy estate for an attorney's services. As a general matter, the bankruptcy court may award "reasonable compensation for actual, necessary services" and "reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1)(A)–(B). To determine "the amount of reasonable compensation," the bankruptcy court "shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including:

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title."

Id. § 330(a)(3). Furthermore, the bankruptcy court "shall not allow compensation" for "unnecessary duplication of services," services that were not "reasonably likely to benefit the debtor's estate," or services that were not "necessary to the administration of the case." Id. § 330(a)(4)(A). Although neither the Bankruptcy Code nor the Fourth Circuit have defined the term "reasonably likely to benefit the estate," district courts in this circuit have understood the statutory language to adopt an "objective test" that "requires consideration of whether, at the time the services were rendered, a reasonable attorney would have believed that they would benefit the estate, rather than a subsequent consideration of the practical effects actually achieved by an attorney's services." Vaughn v. Gold, 671 B.R. 698, 708–09 (E.D. Va. 2025) (quoting In re Vu, 366 B.R. 511, 516 (D. Md. 2007)).

Schultz does not dispute the reasonableness of rates the Martin Law Group charged, the number of hours his attorneys spent, or the complexity of the representation. Rather, Schultz contends that the Martin Law Group's services were neither reasonably likely to benefit the estate nor necessary to the administration of the estate. [Dkt. No. 14] at 31–38. He bases this argument on a claim of malpractice, alleging that "counsel's representation was marred by

14

nondisclosure, conflicts, concealment of dispositive evidence, and abandonment—conduct that is legally non-compensable." Id. at 31. Specifically, Schultz maintains that his counsel "failed to oppose dispositive motions, suppressed evidence disproving the creditor's claim, abandoned the Debtor during critical stages, failed to communicate, missed deadlines necessary to protect the estate, and took actions that affirmatively harmed the estate." Id. at 32. Schultz believes that because "harmful services are not compensable," the bankruptcy court committed "reversible error" when it awarded fees. Id. at 37–38.

Schultz's arguments are unavailing. The bankruptcy judge applied the objective test outlined in Vaughn and In re Vu and concluded that a reasonable attorney in the Martin Law Group's position would have believed at the time the services were rendered that the services were going to benefit the estate. Hr'g Tr. at 40:9–12. That conclusion is clearly correct. For example, the Martin Law Group was reasonable in concluding that spending several hours preparing Chapter 11 monthly operating reports ahead of the hearing on the motion to convert, [Bankr. Dkt. No. 146-2], would have benefited the estate. The November 22, 2024 Consent Order Conditioning Rights of Debtor in Possession required Schultz to file monthly operating reports, and a Chapter 11 debtor's failure to comply with court orders could result in conversion under 11 U.S.C. § 1112(b)(4)(E). Therefore, when the Martin Law Group discovered ahead of the hearing on the motion to convert that Schultz had not filed the required monthly operating reports, the Martin Law Group worked diligently to file those reports before the hearing as an effort to prevent conversion. Any reasonable attorney opposing a motion to convert from a Chapter 11 reorganization to a Chapter 7 liquidation would believe that compliance with the bankruptcy court's orders would benefit the estate. Because the record is rife with examples of the Martin Law Group acting strategically on Schultz's behalf, see, e.g., Hr'g Tr. at 41:13–18 (explaining that "the Debtor's counsel put forth a vigorous argument" in the adversary

15

proceeding, which "amounted to a novel theory upon which the Debtor attempted to invalidate a commercial loan"), Schultz's third argument fails.

Schultz's fourth argument is that the bankruptcy court violated his due process rights "by conducting an impromptu evidentiary hearing on September 9, 2025." [Dkt. No. 14] at 5. According to Schultz, although his former attorney arrived at the hearing "fully prepared with pre-marked exhibits and coordinated testimony," Schultz received "no notice that an evidentiary hearing would occur," "no opportunity to prepare exhibits," and "no meaningful opportunity to challenge" his former attorneys' assertions. Id. at 16. Schultz believes that the bankruptcy court's failure to provide him with notice that an evidentiary hearing would occur deprived him "of a meaningful opportunity to present evidence, confront opposing proof, or prepare for the issues to be adjudicated." Id. at 43–44. Therefore, he maintains that this procedural deficiency "tainted the proceeding beyond cure." Id. at 16.

As the Martin Law Group responds, [Dkt. No. 18] at 17, Schultz's argument fails for three reasons. First, Schultz obviously received notice that the bankruptcy court would hear oral argument on the Fee Petition on September 9, 2025. The Martin Law Group noticed the hearing on August 12, 2025, [Bankr. Dkt. No. 240], 28 days before the hearing. And based on the fact that Schultz appeared at the hearing on the correct date and at the correct time, he clearly received notice of the hearing. Second, Schultz's lack of understanding as to whether he would have the opportunity to present evidence and testimony during the hearing does not mean that the bankruptcy court violated his due process rights. Bankruptcy courts routinely conduct evidentiary hearings before ruling on fee petitions. See In re Smith, 624 B.R. 781, 796–97 (Bankr. D.S.C. 2021); Malloy v. Kane, No. 3:24-cv-200, 2025 WL 777664, at *1 (E.D. Va. Mar. 11, 2025); In re Tobacco Row Phase IA Dev., L.P., 338 B.R. 684, 695 (Bankr. E.D. Va. 2005). And a pro se litigant's misunderstanding as to the bankruptcy court's procedure does not mean

16

that the court violated the litigant's due process rights. Finally, contrary to Schultz's assertion that he did not have a meaningful opportunity to challenge his former attorney's assertions, the transcript of the September 9, 2025 hearing reveals that Schultz was given an extensive opportunity to cross-examine his former attorney. Hr'g Tr. at 16:10–30:10. For these reasons, Schultz's due process argument fails.

Schultz's final argument is that the bankruptcy court erred in relying on the statements made on July 11, 2025 by Jason Gold, the then-Chapter 7 trustee. [Dkt. No. 14] at 38. In response to Schultz's Motion to Disgorge, Gold filed a response disagreeing with Schultz's allegations of attorney misconduct and stating that any disgorged retainer funds "would be property of the estate payable to the Trustee." [Bankr. Dkt. No. 194]. A few days later, Gold resigned by a one-sentence filing stating: "The undersigned chapter 7 trustee for the estate of the above-captioned debtor hereby resigns." [Bankr. Dkt. No. 219]. According to Schultz, Gold's resignation proved that his opinion was tainted by his conflicts of interest, and the bankruptcy court erred "by relying on statements from . . . an individual with undisclosed and subsequently revealed conflicts of interest" and "by ignoring the Trustee's later resignation prompted by these conflicts." [Dkt. No. 14] at 6. Therefore, Schultz argues that because the court "may not base fee or disgorgement decisions on input from actors who are conflicted or ethically disabled," the bankruptcy court's "orders cannot stand." Id. at 38.

This argument is unavailing. As the Martin Law Group correctly points out, [Dkt. No. 19] at 18, the bankruptcy court made absolutely no reference to Gold's response to Schultz's Motion to Disgorge in either the September 9, 2025 hearing, [Bankr. Dkt. No. 395], or in its order approving the firm's Fee Petition, [Bankr. Dkt. No. 301]. Moreover, Schultz's claim that

17

Gold's resignation proves that his opinions were tainted by conflicts of interest is completely unsubstantiated and irrelevant. Therefore, Schultz's final argument will be rejected.[8]

IV.

For the reasons stated above, the bankruptcy court's September 15, 2025 order—which approved the Martin Law Group's application for compensation and denied Schultz's motion to disgorge retainer funds held by his former counsel—will be affirmed by an Order to be issued with this Memorandum Opinion.

The Clerk is directed to forward a copy of this Memorandum Opinion to counsel of record, appellant Paul Schultz, who is proceeding pro se, and the bankruptcy court.

Entered this 21st day of April, 2026.

Alexandria, Virginia

_____ /s/ _____

Leonie M. Brinkema
United States District Judge

---

[8] Although Schultz has also claimed that his former attorney committed unspecified "adjudicative fraud" during the September 9, 2025 hearing, [Dkt. No. 14] at 1, 15, 26, that argument will not be addressed because "courts need not address vague, unsupported arguments by pro se litigants." United States v. Stanley, No. 5:15-cr-166, 2024 WL 4633960, at *3 n.4 (E.D.N.C. Oct. 30, 2024).